## NOEL GREEN vs. THE STATE OF MISSOURI.

1. A motion to postpone a trial in a criminal cause, is addressed to the sound discretion of the court.   The supreme court will not interfere with the exercise of such discretion unless it appears to have been used unsoundly or oppressively.

2. Where the declaration of a prisoner is given in evidence, the jury may reject that part which is in his favor and believe that which is against him.

3. Upon a trial for murder, the dying declarations of the deceased made with regard to the circumstances which produced his death, are to be received with the same degree of credit as his testimony would be if examined on oath as a witness.

4. Deliberation, premeditation and malice, may be infered from the circumstances connected with the killing.

5. If malice appears to have existed at the *time* of killing, it is sufficient, and it is not necessary to prove that it existed any length of time previous.

6. All persons who are present at the time of killing are principals, although only one perpetrated the act, provided all are proven to have confederated and engaged in a common design, of which the act of killing is a part.

APPEAL FROM CAPE GIRARDEAU CIRCUIT COURT.

ENGLISH for defendant.

1st. The court should have continued the case over for a few days, on the affidavit of defendant, for evidence material to him in the defence. It was a question of sound discretion to be exercised for the promotion of justice, and in a spirit of mercy. The affidavit makes a sufficient case, and the decision of the court was oppressive in forcing the trial under the circumstances.

2nd. Malice must be proved; it cannot be presumed in the case of murder. Whatever of doubt there may have been, should have been construed favorably to the defendant. There was no evidence of malice. 1 Rus. Cr. 422, (n) Coffee vs. The State, 3 Yearger, 283.

3rd. Force may be repelled by force; and if death ensue, he that acts in the defence is justifiable. 1 Rus. Cr. 549; 2 Stark. 523; Rus. Cr. Ev. 638, 640, (Ford's case) 4 Black. 18C, 183; Mo. Stat. 344, sec. 4, 5 and 6.

4th. To render a party guilty as principal, in the second degree, he must be present, aiding and abetting at the fact, or so near as to render assistance, if necessary. There was no proof to justify the finding in the case. 1 Rus. Crim. 22, 28, 32, 398; 4 Black. 35; Rus. Cr. Ev. 167, Commonwealth vs. Knat et al.; 9 Pickering, 496; 1 Rus. Crim. 25; Rus & Ry.; 25, 113, 251, 332.

RYLAND, Judge, delivered the opinion of the court.

This was an indictment, found by the grand jury of Wayne county, at the circuit court, at March term, in the year 1849, against Thomas Stuart, Noel Green, William Green, Alfred Green, and William Cobb, for the murder of George Marr. The defendants were arraigned and plead not guilty to said indictment, at the term aforesaid and also filed their petition praying for a change of venue, which petition was allowed and the venue changed to the county of Cape Girardeau.

At the May term of the circuit court in and for the county of Cape Girardeau aforesaid, the circuit attorney moves the court to have the prisoners brought into court. Whereupon the defendant Noel Green is brought into court and moves this court to continue this case to some day during the present term of the court, and files his affidavit in support of his motion, which affidavit is as follows, to wit: "Noel Green, the prisoner, makes oath; that the testimony taken before the committing justice in this case in the county of Wayne, where this indictment was found is material and important for him on the trial of this cause;

he did not know until yesterday, that it was material or that it was not here, he is informed and believes it is in the possession of the jailor of said Wayne county, he affiant, on yesterday sent an express for said tes-timony and believes he can procure it during the present term of this court, he knows of no testimony present by which he can prove the same facts, he expects to establish by said absent testimony; his object is not delay. The said testimony is not absent, by his connivance or consent, he therefore asks for a postponement of this case for some oth-er day during this term.

his<br>NOEL &#8904; GREEN.<br>mark.

This motion to postpone was overruled, and the defendant excepted to the opinion of the court. The case was tried, so far as Noel Green is concerned; he being tried seperately. The following facts were given in evidence before the jury by the witnesses as named (viz.)

The testimony of Alexander S. McDonald. He was acquainted with George Marr; the last time he saw him alive, was on the 30th of Jan-uary last; he was between twelve and fourteen years old; he does not know whether George could read or not, he was a boy of common intel-lect. At the time witness last saw him alive, he was lying at the root of a tree, in the woods, stabbed in the left side, below the shoulder blade; and on the right side of the face, the wound on his side looked like it was stabbed with a knife about an inch wide; when witness found him, he appeared very weak and was bleading, witness asked him, if he could get up, he said yes, but could not rise, he lived fifteen or twenty minutes, witness thinks he was in his proper mind; asked Marr, if he knew him, said he did, and called him by his proper name; witness dont know how deep the wound was, he bled right smart; after he took him up, died (as witness thought) on the way as he was taking him home; he thought he was dead, witness did not see him breathe after he took him home; he said nothing about dying or hereafter, when the wit-ness first saw him, he asked him if he could get up; he attempted to do so, but could not, witness did not know his age, only supposed he was twelve or fourteen years. John Morgan, a witness; said he did not know much about George Marr's capacity; did not know whether he could read; in point of mental capacity, he was about like common boys; he would weigh about one hundred pounds; dont know of his going to church, thinks the boy was twelve or thirteen years of age, never heard him speak of religion, Heaven or hell, the boy never was a witness; does not know, that the boy would know the obligations of an oath,

should think he would know better than to tell a lie. Albert Morgan, says he has known George Marr 8 or 9 years, thinks he could read a little, recollects his being at church once, knows of his attending prayer every night, since the first of August last, dont know whether voluntarily or by compulsion. The deceased was considered a truthful boy, of ordinary intellect, as much so as common boys : deceased came to witness' fathers to live, last spring two years, and continued to reside there up to the time of his death, never heard any body speak of his truthfulness : he was truthful as far as witness knew, was 12 or 14 years old.

The State now proposed to give in evidence the dying declarations of George Marr. The prisoner objected. The court overruled the objection and permitted the dying declarations to be given in evidence, and the prisoner excepted. Alexander S. McDonald recalled. Stated he asked George Marr, who stabbed him, he said Stuart stabbed him, said nothing more on that subject : The way he came to find him, he had started to hunt for those who had not come home. The sister of deceased found him, and called witness, she had left him when witness got to him, saw no marks of a scuffle, nor blood nor weapons on the ground where he found him ; he was by the side of the road leading from Morgan's house to the place cultivated by Morgan down Perkins creek, about half a mile from Morgan's house or over ; Morgan's lower place on Perkins creek about a mile and a quarter from his his house, found him in Wayne county, Missouri ; found the deceased betwixt one and two o'clock, his sister had found him a few minutes before, had not left him more than five minutes. It had rained that day ; saw no tracks of any persons, ground was wet, deceased died twenty five or thirty minutes after he put him on the horse ; had gone 150 yards when he asked him who stabbed him, thought he was dead when he got half a mile. The boy did not mention the subject of death, witness told deceased he was going to die ; and he had better pray, he said he could not ; this was after deceased had told him, who stabbed him.

Thomas Hamilton, stated, Noel Green, the defendant told him (the witness) about a fight, on the evening of the last of January or first of February last, can't tell exactly the words; they were in a fight, him and two of his brothers, and Stuart had a fight with William Morgan and two of his brothers-in-law, told him they came running out of the head of a bushy hollow and attacked prisoner and his company : Morgan came with his gun presented as if he was going to shoot, threatened to shoot if they did not leave there, cursed them: Stuart answered, that

he would not go until he got ready, Morgan presented his gun, as though he was pointing at Stuart, snapped twice, then took a rest, and fixed; then Stuart fired : prisoner begged Morgan not to shoot, there were other ways of settling difficulties without shooting, but he did shoot : prisoner then raised his gun to strike him, but Morgan came round the tree, got the start of him, struck at him the prisoner, knocked his gun out of his hands and knocked him to his knees, as he rose, Morgan again struck him and knocked him clear down : At that prisoner gets Dick's gun and twisted it out of his hands and aimed to break it round a tree, but the thought struck him, that he would not, and he threw it away. At that time prisoner heard Morgan halloo murder, and asked Tom Stuart for God's sake to spare his life, prisoner then walked towards them, as they lay in a branch, several together, prisoner did not say how many. Then Stuart quit, and Morgan got up and walked off about ten steps, prisoner walked after him a few steps, Morgan turned round and said, "Noel, I'll quit now, I'll fight no more," witness asked prisoner where the boy was, he said he was there, but did not say where, asked him, if he was not in the fight, he said, not that he knew of, asked prisoner if he thought any of them were badly hurt, he said he did not think they were, asked him, which way they went, said, Morgan went one way and Dick Marr the other, said Morgan sat down by a log, and the boy, the last he saw or him was sitting by Morgan and appeared as though he was talking to him, the boy was not hurt as he knew of, the prisoner then said they gathered up their tools and went home. Prisoner's first statement was, that he and two brothers, Stuart and Cobb, were in the woods peaceably cutting house logs, this conversation took place on the road, they met a traveller and witness was told the boy was killed, he again spoke, the prisoner, and told him, "he thought the boy was hurt," prisoner said he was not, that he knew of, cross examined. Stated that he dont know, that he has stated all that passed, he has stated the substance, to the best of his recollection, prisoner told him, Stuart was wounded, saw wound on the arm of prisoner, prisoner told him, his brother William's, head was cut open. Witness found cut on Stuart's arm, found a cut on William Green's head, saw a slight bruise on a younger brother, prisoner told him, they were in the woods on Congress land peaceably cutting house logs, were engaged in that, when the others came charging on them, witness lives about twelve miles from the scene of the fight, witness was away from home when prisoner came to his house he found him on his return in his shop, this was about sun set, came for him to go to see Stuart, went with him,

conversation took place on the road.    Found Stuart at Lewis Green's, witness staid all night so did prisoner, Catherine Morgan on oath says. She is acquainted with George Marr, saw him at William Morgan's the morning of the affray, dont know of his leaving William Morgan and Richard Marr even then.    The last time she saw him was after late breakfast time, next time she saw George was when McDonald brought him home ; he gasped for breath, after he was brought in, dont know the time of day he was brought, it was between ten and two o'clock ; she missed them all about the same time to-wit:    Morgan, Richard and George Marr.    Thomas Hamilton recalled, saw wounds on George Marr on the side of his face, one on the back, didnt examine them, cross ex'd The wound on Stuart's arm was cut nearly half way round, cutting an artery, bled very much, produced great debility, confined him to bed, went to Stuart as physician, he could not get up, did not see him up.

John Gibson, said : I am acquainted with Noel Green, never saw George Marr, but once before saw him dead, was at Lewis Green's the day of the difficulty, saw Stuart, Cobb, Alfred and William Green, Stuart was in bed, his arm bound up all bloody : did'nt see Noel, was between 12 and one o'clock, saw Morgan and Richard Marr at Carltons that morning alive, saw them in the evening after they were dead, about half mile from Carltons : heard their guns fired, after he saw Morgan whilst at Carltons at work, heard noise, like men fighting, then heard one halloo afterwards not quite in the same direction, so little difference in direction cant describe it, it was to the left of the first noise right smartly, saw the bodies of Morgan and Richard Marr near a north course from where he was at work :    Morgan's house was something near the course from him of the single halloo in going from where he was to Morgan's house, would go something like 200 yards to the left of the first noise.    The bodies were found in Wayne county, could not tell, what the second halloo was for, it was just a halloo.    Morgan had a gun that day ; saw it since at Morgan's, saw it on the battle gound, it did not look like it was broke, saw another gun then, it was a good deal broken in the stock, cross ex'd.    The distance from where witness was to the battle ground was about half a mile, the noise was like men fighting, can't give any other description, did'nt have Morgan's gun in his hand, can't describe it, it was a rifle ; the second noise appeared right smartly further off ; the noise was about half a mile from him.    The second noise was about 200 yards from the first, the reason, he took the course was, he expected a fight.    Stuart had entered some land, nearly on the course, where the noise was.    Don't know whether fight was on

Stuart's land or not.  Morgan told him that morning, he had came by where Stuart had been at work.  Morgan's field was about 200 yards from the battle ground supposes it was Morgan's, saw Morgans people gather truck out of it, Stuart entered part of it.

Alexander S. McDonald recalled, has been living in the neighborhood 18 months, don't know any body by the name of Stuart in the neighborhood except Thomas Stuart.

John Eaker, never saw Noel Green until the day he came to Dr. Hamilton's the day the battle is said to have taken place; heard him speaking of the scrape he supposed; heard him say, himself, Stuart, Cobb and his two brothers were in the woods cutting house logs.  Morgan, Dick and George Marr came to them.  Morgan slipping up like he was going to shoot a deer, about 30 yards off.  Morgan cocked his gun, snapped at Stuart's breast.  Prisoner told Morgan, there were other ways of settling difficulties without shooting, he made no answer, but he snapped again, and then fired.  After Morgan fired, Stuart fired at Morgan.  Stuart's ball struck a tree about two feet above Morgans head :  Then Richard Marr, shot, as his, prisoner's brother said at him the prisoner.  Witness asked if any were hurt, prisoner said, he did not know, asked him, where the Morgans were, he said he left them there, witness asked him again if any of them were killed, he said he did not know, he asked him a third time if any were killed, he said he expected there was two or three, but did'nt say positively : witness asked him if any knives were used, prisoner said, he expected there was, when they got into close work.  Don't recollect about prisoner saying any thing about having a gun himself, prisoner did not say who he thought was killed, he expected there was two or three ; prisoner said his father told them the night before, they would have a scrape, and they had better prepare themselves, they did so, but did'nt expect to have such a scrape as they had ; did'nt say how they prepared.  Cross ex'd.  This was either first of February or last of January, it was something after 12 o'clock, don't recollect whether he had eaten dinner or not; prisoner came for Doctor Hamilton, to go to see Stuart, who had got his arm cut ; in speaking of the killed, prisoner did not mention either party, conversation was in the shop of Dr. Hamilton, Dr. Hamilton was present, except whilst he went out to catch his horse.  Thomas Williams was present all the time, it took place a few minutes after prisoner got there.  First Dr. Hamilton and prisoner were talking of the circumstance and the witness asked these questions ; prisoner said Marr shot at him, so his youngest brother told him, they were about 30 yards

off when prisoner first saw them. Morgan said clear out you damned rascals, then raised up to shoot, said it occurred that day about one and a half miles from Morgan's in the woods, prisoner said, I expect there was two or three killed and dropt his head so ; said they went to fathers that night; that Stuarts arm was cut very badly, he hurried off for the docter. George Marr was hewing away at Stuart, cutting away with his axe, re-examined by State. Prisoner did not see Marr shoot at him, he had his eye on Morgan, thought him the stoutest man.

Allen Carlton says Morgan and Richard Marr were in his field the morning of their death, a little more than a quarter of a mile from the battle ground. He afterwards heard three guns fire, a noise like men quarrelling and jowering. This was half an hour after Morgan left. Gibson was with the witness : They went north course. Saw Richard Marr's gun, he afterwards saw broke off close to the guard, it had a half stock, Morgan's had a whole stock, Morgan's gun was not broken as he could see. Witness is not acquainted with any Stuart, but Thomas Stuart, has been living in that neighborhood six years, witness saw logs where the affray took place, they looked fresh cut. Morgan has a field something over 200 yards from the place, used to have a house 170 yards from it, but the house is gone, cross ex'd. Heard chopping that morning, not exactly in the direction of the battle ground, was not on the ground till late in the evening : saw 2 guns there and an axe, he did not hear the guns in the same direction of the chopping ; did not leave the field where he and Gibson were at work for half an hour after he heard the guns ; did not hear any single halloo at all that day, after the noise of the fight; the reason he did not go, where he heard the noise, was that he expected that somebody was killed, and did not wish to get into difficulty : John Gibson and witness were close together, when they heard the noise, stayed together till dinner. Morgan left the old place where the house was over six years ago, did not hear any seperate noise, heard an axe before the affray, saw fresh cut logs on the battle ground ; there is no house or field on the old house place, supposes the logs were cut on public land.

Samual Manedy, says when he came to the battle ground, saw Richard Marr lying across a log, about 30 yards off was Morgan dead. Next morning at Morgan's examinend the wounds. On Richard Marr, found five, three near the left nipple, one on the right side, one on the left side. On William Morgan were nine stabbs, seven on the body, one in the thigh, one in the hand. On George Marr was one in the side of the face, from the mouth to the ear, one on the left side, Morgan had a knife

in his scabbard, a double barrelled pistol in his pocket, caps on the tubes In the wound on George Marr he thought he could see the caul fat : it was on left side under shoulder blade, saw two guns and one axe lying close to body of Richard Marr. Knows Thomas Stuart, has lived in two miles of him, has lived nine or ten years there, knows no other person in the neighborhood of the name of Stuart, except Thomas Stuart. Morgan's gun was lying on a tree top, like it was half cocked. Marr's gun was broken, it had half stock, cross ex'd. Saw the pistol and knife on the morning after the fight, the pistol was in the right pocket. I looked at the pistol as one of the jurors of inquest, took it out of the pocket and saw caps on the tubes. This was about day-light, it was in the month of January, but don't recollect the day of the death. Richard Marr was lying about thirty steps from William Morgan on the battle ground, did'nt know who took the guns there, both guns were Morgan's; the fighting was done in Wayne county in the woods, where there was no field, there were bushes and undergrowth ; there were bushes on the north side of the battle ground. There was undergrowth all around. Morgan lived one mile and a quarter or a half distant. I did not examine the body of Morgan in the woods : we found the pistol next morning, it appeared as if there had been rain on the bodies before they were removed. Morgan was a stout, strong man.

John James, says : I saw William Morgan and Richard Marr, on the battle ground, on the last of January or first of February: saw Morgan's gun and an axe on the first evening, next morning went back and saw another gun, called Richard Marr's gun, Morgan's gun was lying half cocked, the pan was open, next evening picked up Morgan's gun, Myers blew in it, no wind came out, we picked out something of the appearance of wet powder, out of the touch-hole, carried the gun to Mr. Morgan's, there unbriched her, and got a ball and wet powder out, the gun was lying on the second day, half cocked and pan open, just as she was before, as nigh as he could tell, when he noticed the gun the pan was loose, if the muzzle was turned down it would open ; one of the gun's had a flint lock, the other a percussion, Richard Marr's was a percussion lock ; Richard Marr's gun was half stocked, a piece about one foot long was broken off of Richard Marr's gun, the piece of the stock was picked up on the ground. There was a piece of a gun stock between Morgan and his gun, it did not belong to either, only saw one piece besides Marr's, that was about one foot and a half long. Cross examined: It was something like sun down when witness first came upon the ground, knew Morgan's gun, saw Richard Marr's gun next morning, on the first

evening saw an axe, but did'nt know whose it was, has not seen it since, that he knows of, supposed to be Morgan's. Hahn Carlton and Bellinger were on the ground when he went there. The broken gun was some little nearer to Morgan than his own, don't recollect that he noticed any shoe tracks. When Myers blew in Morgan's gun no wind came through, we got wet powder and a ball out, but saw no patching, there had been a hard rain in the forepart of the first day. Again examined by the State, says, he knew Thomas Stuart, knew no other Stuart in the neighborhood. The guns were something like fifteen steps apart, Marr's gun was fifteen steps from Morgan's gun, Morgan was fifty steps north of Marr, Morgan's gun was about twenty steps from him, the axe lay a north-east course from Marr's gun, on the battle ground, don't know for certain, but thinks the axe was nearer Morgan's gun. He examined the bodies of William Morgan and Richard Marr, Morgan was wounded on his head, about the length of his finger, wound about one half inch wide and cut to the skull, but the skull was not broke, as he could discover, there were seven wounds on his body, one in his hand and one in his thigh, three were about one inch and a quarter wide. Richard Marr had five stabbs, three around the left nipple, the other two in the right side, opposite the heart. Cross examined again: The entry of land made by Stuart, was made down about the battle ground, taking a part of Morgan's farm, takes a part of the field, where the battle ground was in the woods.

Samuel Thomson, says : He heard Noel Green give testimony in the case of Thomas Stuart the other day, said they were at work cutting house logs, when Morgan and the two Marrs came up, out of the head of a thickly hollow, towards them, when they got in a short distance Morgan said, here you are, you damned son of a bitch, told him to clear himself, or he would blow his brains out. Stuart told him, he would not go 'till he got ready, he advanced on to where they were, and laid his gun up by the side of a tree and snapped twice, his gun apparently presented at Stuart, the third time it fired, Richard Marr shot at him, (Green,) Morgan went on towards Stuart, came close by him, and knocked him down with his gun, and went on and knocked Stuart down with his gun, first he saw when he got up, George Marr was striking at Stuart with his axe, while Morgan had him down, it struck Stuart about the side somewhere, said the axe seemed to hang in his clothes, Morgan told Stuart to quit, he had enough. Morgan came walking away, and he, Green was going across, Morgan told him not to follow him he had enough, then said we all left there and went together home, last he saw

of them, Morgan was setting on a log and George Marr was holding his hand, George was not hurt as he knew of at that time, they went to old man Green's. Cross examined, Noel Green said : Stuart got a bad cut on his arm, don't know positive as to what he said, Morgan said, but thinks he said damn son of a bitch, was speaking to Thomas Stuart. This was all the evidence given in this case.

Upon this state of the case, the State by the circuit attorney, asked the following instructions, which were given by the court.

1st. That the facts necessary to be established in a case, may be established by circumstances alone.

2nd. In receiving the declarations of the prisoner, the jury ought to take the whole of them into consideration, and may believe that part, which charges the prisoner, and reject that which is in his favor.

3rd. The dying declarations of a person who has been killed, if made with regard to the circumstances which produced his death, are to be received with the same degree of credit, as the testimony of the deceased would be, if examined under oath as a witness.

4th. Deliberation and premediation may be proved directly or be infered from the circumstances connected with the killing; and malice may be established in the same way.

5th. If malice existed, it is sufficient, it is not necessary to prove the length of time it existed.

6th. All present at the time of committing an offence, are principals, although one only acts, if they are confederates and engaged in a common design, of which the offence is part.

7th. It is not necessary, in order to render a party an aider and abettor, that he should be actually present, it is sufficient, if he was in such a situation as to be able readily to come to the assistance of his companions, the knowledge of which was calculated to give additional confidence to them, and it makes no difference who strikes the blow, the blow of one is the blow of all. If the jury believe that Thomas Stuart, wilfully, deliberately and premeditatedly killed the boy, George Marr, and that Noel Green the defendant was present, aiding and assisting in the act, he is equally guilty as he who committed the act.

To the giving of these instructions the defendant objected, and excepted to the opinion of the court.

The defendant then asked among others, the following instructions, which the court refused.

1st. The jury must be satisfied from the evidence, that Noel Green, did wilfully, deliberately and premeditatedly, murder George Marr, or they must acquit the prisoner.

2nd. In order to convict the prisoner, the jury must believe from the testimony, that the prisoner intended to kill at the time of killing, and that he intended to kill before the killing took place.

3rd. In order to convict the prisoner, the jury must believe from the testimony, that Stuart murdered George Marr, and that the prisoner was present, and wilfully, deliberately and premeditatedly aided in the commission of the murder. The court then gave the jury, the following instructions on the part of the defendant.

1st. The State must prove the charge as laid in the indictment or the jury must acquit.

2nd. If from the testimony, the jury have a reasonable doubt as to the guilt of the defendant, they ought to acquit.

3rd. If from the testimony, the jury believe that the accused and his party, were peacably engaged about their own business, and were attacked by Morgan and his party Richard and George Marr, with such violence and surprise, and with deadly weapons to murder them or to do them some great personal injury, and there being immediate danger of such designs being accomplished, then they had a right to use such force as was necessary to repell the assailants, if death ensued then such killing was justifiable, and the jury must acquit.

4th. If the jury should believe from the testimony, that the prisoner went with Stuart without any intention on his part to commit a felony, and Stuart killed Marr, without the consent and aid of the prisoner, then they must acquit the prisoner. That presumption to justify the conclusion of guilt must be reasonable and flow necessarily from facts proved in the case. To which opinion and decision of the court, the defendant excepts.

The jury found the prisoner Noel Green guilty of murder in the second degree, and assigned his punishment to ten years imprisonment in the State Penitentiary.

The defendant, thereupon, moved the court to set aside the verdict, and grant him a new trial, for the following reasons, (viz.)

1st. The court erred in refusing a postponement of the case, on the affidavit of the accused.

2nd. The court misdirected the jury as to the law of the case.

3rd. The finding of the jury is against the evidence.

4th. The finding of the jury is against the law, as applicable to the case.

5th. The finding of the jury is against the weight of testimony.

6th. The jury from the law and testimony in the case should have ac-

quitted the prisoner.   Which motion the court overruled.   The defendant excepted to the opinion of the court, prayed for an appeal, which was allowed him, and brings his case to this court.

From the record and proceedings of the court below, it will be necessary for this court to review the action of the circuit court in overruling the defendant's motion, to postpone the trial for some other day, during the same term of the court.   Also the overruling the defendant's objection to the testimony, describing the wounds on the bodies of William Morgan and Richard Marr, their situation on the field of battle, when they were found.

The motion to postpone the trial unto some other day in court, is one addressed to the sound discretion of the court, and unless we find that the court has exercised this discretion oppressively or unsoundly and indiscreetely, we will not interfere with its action.   The business before the court, the great number of witnesses and venire men in attendancy, are all to have their consideration, in granting such indulgence.   The affidavit of the prisoner shows no grounds for the postponement.   The testimony taken down by the committing and examining justice, is not evidence for the State, or prisoner, on his trial upon the indictment; it may have been important for the prisoner to have been able to hand his counsel the testimony, thus taken down as the means of enabling him the better to understand the transaction, and to make preparation for the defence on the trial, but not to use it as evidence before the jury. In this case, it is probable, his counsel did not need it, or he would have made enquiry for it sooner, and taken steps to have obtained it, or at least would have informed his client of its importance.   We find no error therefore, in the court below, in refusing to postpone this trial for some other day at the same term.   Nor do we perceive any error in permitting the witnesses to testify in regard to the wounds on the bodies of Morgan and Richard Marr.   This whole affair may have been considered as the same transaction—different scenes making up the awful tragedy.   It was well then to let the whole appear before the jury.

We will next consider the instructions given by the court for the State. Also those refused on the part of the defendant, as well as those given for the defendant.

We find nothing incorrect, nothing illegal in the instructions given for the State, they contain the law, so far as relates to transactions of this character.   The instructions which the court refused to give for the defendant as above set forth, are not the law, and the court properly refused them, they are calculated to mislead the jury, and do not contain the

law applicable to this case, or to the facts as detailed in evidence in this case.

The instructions which the court gave for the defendant were proper, and are what the law of the case warrants; and more especially do the 3rd and 4th instructions for the defendant, put his case before the jury in a point of view as favorable to the prisoner as the law arising from the testimony given before them will warrant. We consider the court went far enough for the prisoner. He has no cause to complain of the action of the court. We find no error, therefore, in giving or refusing to give instructions. The action of the court, therefore, in overruling the motion for a new trial, was correct, and its judgment is affirmed.