Roberts *v.* Gee.

---

## ROBERTS *vs.* GEE.

The rule as now established, in reference to the oral admissions of a party to a suit, permits the court and jury to believe that part of an admission which *charges* the party who makes it, and to disbelieve that part which *discharges,* when the latter is improbable on its face, or is discredited by the other testimony.

Where a party to a suit is called as a witness, by his adversary, and testifies to an independent matter, in his own behalf, the court and jury are not *bound* to believe him, and decide according to his testimony.

It was the intention of the code, in authorizing parties to be examined as witnesses, to confer upon the courts a wide discretion as to the credit to be given to their testimony.

THIS was an appeal by the defendant from a judgment of the Dutchess county court. Roberts sued Gee, before a justice of the peace, to recover for the board of Gee and his wife. Gee was called and examined as a witness, by the plaintiff, and was the only witness on the trial.

The facts proven were that Gee boarded with Roberts from August to November, 1849, under an express agreement made between Gee, Roberts and one Deuel, that Roberts should look to Deuel for the payment, and Deuel promising to pay the bill. This agreement was made before Gee commenced boarding; the

---
Roberts *v* Gee.
---

consideration being that Deuel was indebted to Gee, and Roberts was indebted to Deuel.  Gee worked for Deuel, at the scythe-making business, during the time he boarded with Roberts.  He proved the correctness of the bill rendered, as to time and amount, and testified that he made out the same, himself, and sent it to Roberts.  In this bill Gee was made the debtor.  He also swore that on the 5th of August, 1850, he wrote a letter to Roberts, which was introduced in evidence.  This letter contained this clause : "I have written to Mr. Deuel and told him to pay my bill : he knows what is coming to me, and can pay it, just as well as though I was there."

The justice rendered a judgment against Gee, for $45, which the county court reversed, on appeal.

*R. Peck*, for the appellant.

*W. S. Eno*, for the respondent.

*By the Court*, BARCULO, P. J.  The only witness examined before the justice was the defendant.  On being called by the plaintiff he distinctly proved the demand of the plaintiff as set forth in the complaint.  On his cross-examination, however, he testified that the plaintiff had given the credit to one Deuel and agreed to take him as paymaster.  The justice gave judgment according to the admission of the defendant, and did not allow the defense.  The county court deeming this erroneous, reversed the judgment of the justice.  It is for us to determine which of these two courts has mistaken the law.

The old rule requiring that where the oral admission of a party is resorted to as evidence against him, the whole of the conversation must be taken, was very properly modified in a material respect by the court of king's bench in the case of *Prince* v. *Samo*, (7 *Adol. & Ellis*, 627.)  Lord Denman, in delivering the opinion of the court in that case, repudiated the doctrine that admits the entire declaration of a party, and limited the inquiry to such portions of the conversation as tend to explain or qualify the statement first inquired for.  Our courts have gone a step

further; and, while they adopt the modified English rule ad-
mitting the whole of the conversation or declaration so far as it
relates to the point inquired of by the party first calling for it,
have superadded the very sensible principle, that when that part
of the declaration which tends to discharge the party making it,
is improbable, or inconsistent with other evidence in the case,
the jury may reject it, and give effect to the other part. (*Kelsey*
v. *Bush,* 2 *Hill,* 440. *Garey* v. *Nicholson,* 24 *Wend.* 351.) In
other words, the rule as now established, permits the court and
jury to believe that part of an admission which *charges* the
party who makes it, and to disbelieve that part which *discharges,*
when the latter is improbable on its face, or discredited by the
other testimony.

This principle, applied to the case before us, disposes of it at
once. For the defendant himself testified to the sending of a
bill in his own handwriting, in which he had made himself debtor
for the board in question. He also admits that he sent with the
bill a letter to the plaintiff in which he made this statement:
"I have written to Mr. Deuel and told him to pay *my* bill."
These acts are, at least, somewhat, if not absolutely inconsistent
with the idea that Deuel was the original debtor; and if, upon
such evidence the justice saw fit to decide against the defense,
his decision cannot be disturbed.

There is another question involved in this case, which is fre-
quently presenting itself at the circuit; and which under our
new system is dignified with considerable importance. *Is a
court and jury bound to believe a party swearing in his own
behalf?* The code authorizes a party to call his adversary and
examine him as a witness against himself. (§ 390.) A subse-
quent section permits a party so called by his adversary to be
examined in his own behalf "in respect to any matter pertinent
to the issue." (§ 395.) Now, so far as regards the testimony
given by a party *against* himself, there is a manifest propriety
in compelling a jury to give it credit: but is this true when he
swears to an independent matter, in his own favor? If a de-
fendant on the witness' stand admits his execution of the prom-
issory note which is the foundation of the action, we may safely

Roberts *v.* Gee.

say that the jury are bound to find the fact accordingly : but if he goes further, and, in his own behalf, testifies to a set-off exceeding the amount of the note, are the jury required by any rule or principle of law to find a verdict in his favor ? I think not.

The code does not furnish us with any guide on this subject. It merely opens the door and lets in parties and interested persons, and permits them to testify in behalf of their own interests, under the plausible pretense of eliciting truth, avoiding legal disputes as to the competency of witnesses, and expediting the trial of causes. Those whom experience at the circuit has made acquainted with the numerous questions now raised, touching the admissibility of assignees and of co-plaintiffs or co-defendants ; who value the time often wasted in endeavoring to extract something to prop up a desperate case from an unwilling party turned into a reluctant witness ; and who consider the utter disregard which jurors whose sound sense teaches them that reliable evidence can only be expected from pure and disinterested sources, do, and always will manifest, for testimony obtained by such new devices, may perhaps be as competent to judge how well founded these pretenses are, as those who substitute theory for practice—speculation for experience. Unfortunately those whose opinions are worth most on such subjects are, ordinarily, least obtrusive and officious in urging them upon the " powers that be." The statute admits the witnesses, but is silent as to the *effect* of their testimony. It does not declare that they *shall* be believed, nor that their credit may be determined by the jury. In making every thing so very plain and simple and harmonious, our lawmakers seem, for a moment, to have been oblivious of the well settled principle of law, which is absolutely essential to the security of individual rights, that a witness who is unimpeached and uncontradicted *must be believed.* For surely they could not have designed to extend and apply this principle to the testimony of parties, interested persons, and felons, to whom also the privilege was proposed to be extended. (*Report of Commissioners,* § 352.) Such a doctrine would be subversive of all certainty and security in judicial proceedings ; and would bring

Roberts *v.* Gee.

in a train of evils infinitely greater than all those which are claimed to be remedied by modern inventions.

We must conclude, therefore, that in enlarging the sphere of testimony, the legislature must have intended, in regard to the witnesses thus admitted, to give the tribunals that weigh their testimony a wide discretion as to the credit to be be given to them. This seems to be in accordance with the general tenor of the notes of the commissioners. In regard to felons they say " it is wiser, we cannot doubt, to place the witness on the stand, and let the jury judge of his testimony." This construction accords also with the English statute, which, as Lord Brougham says, " wisely opens the door to the witness, but reserves the estimate of his credit and the value of his evidence, to those who are to judge the cause."

This construction, too, will render these provisions comparatively harmless among intelligent jurors. But if our courts feel constrained to put such witnesses upon the footing of disinterested witnesses, and set aside the verdicts that are rendered against their testimony, it will add another to the fast accumulating evidences of the necessity of *repealing the code*, before we can hope for any thing like certainty or uniformity in the administration of justice.

The judgment of the county court is reversed, and that of the justice affirmed.

[KINGS GENERAL TERM, January 3, 1853. *Barculo, Brown* and *S. B. Strong,* Justices.]