### JOHN BROWN *v*. THE STATE.

1. EVIDENCE.—When declarations of a prisoner are adduced in evidence by the prosecution, the jury may believe such of them as criminate him, and, in view of all the evidence, may disbelieve such as tend to acquit him, though not directly contradicted by other proof, nor intrinsically improbable, and notwithstanding the prosecution has also introduced accordant declarations of a confederate of the prisoner.

2. SAME.—See facts held sufficient to sustain a conviction for theft of a horse.

APPEAL from the District Court of Travis. Tried below before the Hon. E. B. TURNER.

The indictment charged John Lindsay and the appellant with the theft of a certain black gelding, the property of W. L. Lubbock. Brown was the only party on trial.

D. H. Walsh, the first witness for the state, testified that he lived about a mile and a-half from the city of Austin ; that, about eight o'clock in the evening of October 5, 1876, coming into the city, he saw two ponies tied to a rack close to a Mexican restaurant, one of which attracted his attention by its resemblance to W. L. Lubbock's pony, which is a small, black gelding. On getting in front of the restaurant,.

witness heard Lindsay say to another man that he wanted to sell a pony cheap. Witness then rode by the black pony again and became convinced that it was Lubbock's pony, and then went for Deputy Sheriff Carrington. Returning with Carrington, they found the ponies still tied to the rack, with Lindsay, Brown, and two or three other persons looking at them. Witness asked Lindsay if this black pony was for sale, and he looked at the witness and said, " No, he is not for sale." Then the witness said he believed the pony belonged to a friend of his, but before he would swear to that he would examine the pony. Lindsay said, " All right, take him and examine him ;" and, while witness was unhitching the pony from the rack, Lindsay started off to go across the street, when Carrington told him he could not get off that way, and he came back. Witness asked him where were the saddle and bridle belonging on the pony, and he replied that they were by a tree which was near at hand. Witness got them and put them on the pony. Carrington blew his whistle for assistance, and J. Gildart and T. H. Sublett came up. When witness claimed the pony, Lindsay said that he had swapped for him with a negro, up the river ; that he had never stolen a horse in his life. Witness had not accused him of stealing the horse, but told him that, if he had traded for the horse, he had made a bad trade, as the horse was a stolen horse. Lindsay was arrested because he claimed the pony, and Brown because he had his horse tied along with the pony, and said he saw Lindsay trade for the pony.

Deputy Sheriff Carrington, for the state, testified that he was summoned by the previous witness, Walsh, to arrest Lindsay and Brown, who were at a Mexican restaurant in the city of Austin. They had with them two ponies, tied to a rack, one a black and the other a sorrel gelding, and were trying to sell them both to a Mexican. Brown, point-

ing to the sorrel pony, said, "This one is mine; look at him." Witness arrested Lindsay and Brown, and put them in jail.

T. H. Sublett, for the state, testified that he was present when Walsh took Mr. Lubbock's pony from Lindsay and Brown, and that, as Walsh started away with the pony, Brown said he had a coat on the saddle. Carrington and witness took Lindsay and Brown to jail, and Lindsay then asked witness to get his sorrel horse, which was tied to the rack, and Carrington and witness got the animal and took him to a livery stable.

W. L. Lubbock, for the state, testified that he lived about two miles from Austin, and was the owner of the pony in question. On October 5, 1876, witness rode the pony into town and hitched him on Pecan street. In the after-noon he loaned the pony to A. T. McCain to ride up town, but did not see McCain when he brought the pony back. About five o'clock in the afternoon witness looked for his pony at its usual post, but it was not there. Two or three hours afterwards witness went home, and about nine o'clock Mr. Walsh brought the pony and delivered him to witness.

A. T. McCain, for the state, testified that, after borrow-ing the pony from Lubbock, he rode him but a few minutes, and then tied him to the post from which he got him.

James McCullough, for the state, testified that he was an auctioneer in the city of Austin; that about three o'clock in the afternoon, October 5, 1876, Lindsay brought to him a roan pony for sale, and witness sold the animal for $18. Defendant, Brown, was with Lindsay. Lindsay said he wanted to sell the pony in order to buy another horse.

James Gildart, for the state, testified that between four and five o'clock in the afternoon of October 5, 1876, he saw Lindsay and Brown together in Pecan street, in the city of Austin, and heard Brown speak to Lindsay about the sale of

a pony.   Two or three hours later witness saw them in the custody of Deputy Sheriff Carrington, and heard Lindsay say that he had swapped for the black pony, up the river, with a negro whose name he did not know; and Brown then said that Lindsay's statement was so, and that Lindsay could prove it by him.

No evidence was offered in behalf of the accused.

The jury found the appellant guilty, and assessed his punishment at five years in the penitentiary.   A new trial was asked and refused.

*R. M. Russell*, for the appellant.   The court will see by looking at all the testimony in the case—and we do desire the court to examine it all carefully—that the only circumstance against Lindsay even, is his recent possession of the property stolen, and the declarations of Lindsay, put in by the state, accounts for that possession.

The declarations of these parties, put in by the state, and not proven to be untrue, cannot be disregarded.   The state is bound by them.

In the case of *Jack Conner* v. *The State*, 34 Texas, 659, the court, adopting the language of McNally in his Rules of Evidence, observes that "everything is a doubt in a civil case where the jury weigh the evidence, and, having struck a fair balance, decide according to the weight of the evidence.   This, however, is not the rule in criminal cases; for it is an established maxim that the jury are not to weigh the evidence, but in cases of doubt to acquit the prisoner." Again: Phillips on Evidence observes that "the principal difference to be remarked between civil and criminal cases, with reference to the modes of proof by direct or circumstantial evidence, is that in the former, where civil rights are ascertained, a less degree of probability may be safely adopted as a ground of judgment than in the latter case, which affects life and liberty."   Roscoe's Cr. Ev. 14.   In

cases affecting life or liberty, the evidence must be so con-
clusive, the presumption so strong, as to exclude every
rational doubt of the guilt of the accused. This principle
is recognized, and fortified by numerous authorities, in the
opinion of Justice Donley in the case of *Billard* v. *The
State*, 30 Texas, 369.

Roscoe, in his Criminal Evidence, page 55, states the doc-
trine in these words : " There is no doubt that, if the prose-
cutor uses the words of the prisoner, he must take the whole
of it together, and cannot select one part and leave another ;
and, if there be no evidence in the case, or no evidence
incompatible with it, the declarations so adduced must be
taken as true." This meets the very point in question—
that the jury may not deny the proper weight to what is
uncontradicted and probable in itself. * * * In the
case of *Tipton* v. *The State*, Peck's Tenn. R. 305, it is
held "that no part of the confession could be rejected
unless it was proved to be untrue ; that the jury could not
arbitrarily reject that part which went in discharge of the
prisoner, and go upon that part only which criminated
him."

The innocence of the defendant is consistent with all
the facts in evidence in this case. All of the evidence in the
case is circumstantial. " To justify a conviction upon cir-
cumstantial evidence alone, the facts relied upon must be
absolutely incompatible with the innocence of the accused,
and incapable of explanation upon any other reasonable
hypothesis than that of guilt." *Barnes* v. *The State*, 41
Texas, 344. Also *Roseborough* v. *The State*, 43 Texas,
575.

Is it not too frequently the case with juries, trying parties
charged with theft of horses, to change the rule that the
party accused is entitled to the benefit of the legal presump-
tion in favor of innocence, which, in doubtful cases, is always
sufficient to turn the scale in his favor, and in lieu thereof

indulge in the presumption, so soon as the party is placed before them for trial, that he is guilty, and require proof to show that he is not guilty?

The only evidence in this case against the defendant was that the horse was found in the possession of Lindsay, the party jointly indicted with him, and that he (Lindsay) stated that he traded for the horse, up the river, and could prove it by defendant; to which the defendant answered in substance that it was so. This being the testimony as shown by the record, and not contradicted or inconsistent, nor yet improbable, and not proven to be untrue, the judgment of the district court ought to be set aside and the cause dismissed, and the appellant released from custody. "Whenever any other hypothesis can be predicated of the facts proved, consistent with the innocence of the party accused, it would be tyranny, oppression, and the grossest injustice to demand a victim to expiate an offense against the law from such uncertain demonstrations by the evidence." *Perkins* v. *The State*, 32 Texas, 111.

*George McCormick*, Assistant Attorney General, for the State.

Ector, P. J. There is but one question raised by the counsel for the defendant, and that is as to whether the defendant's motion for a new trial was properly overruled. The only ground set out in the motion is that the verdict of the jury was contrary to the law and the evidence.

The defendant, together with one John Lindsay, was indicted for the theft of a black gelding. There was a severance in the trial. Brown was tried and convicted, and his punishment was assessed at five years in the penitentiary.

No exceptions were taken to the charge of the court; no additional instructions were asked. In fact, the counsel

for the defendant, in his able brief, sets out with the declaration that he thinks that the court gave the law in charge to the jury, and, if they had regarded the charge, a different result would have been reached; and that therefore the court erred in overruling defendant's motion for a new trial.

It is insisted, on the part of the defense, that the state having put in evidence the declarations of the defendant, if they were not contradicted by other evidence, and were not improbable in themselves, the jury were bound to acquit; that the state having also placed in evidence the declarations of Lindsay (the party jointly indicted with Brown), and they agreeing with and corroborating each other, and being uncontradicted and consistent, therefore they must be taken as true. And, in support of this position, counsel makes the following quotation from Roscoe's Criminal Evidence: "There is no doubt, if the prosecutor uses the declaration of a prisoner, he must take the whole of it together; and, if there be no other evidence in the case, or no other evidence incompatible with it, the declaration so adduced must be taken as true."

Unfortunately for the position of the defense, this is not all that is said in this immediate connection by Mr. Roscoe. The learned author continues: "But if, after the whole of the statement of the prisoner is given in evidence, the prosecutor is in a situation to contradict any part of it, he is at liberty to do so; and then the statement of the prisoner, and the whole of the other evidence, must be left to the jury for their consideration, precisely as in any other case when one part of the evidence is contradictory to the other."

When the state's counsel uses a prisoner's statement, he must take the whole of it together; but there is not the least doubt that a jury may believe that part which charges

10

the accused, and reject that which is in his favor, if they see sufficient grounds for so doing.

Mr. Greenleaf says: "The jury may believe that part which charges the prisoner, and reject that which is in his favor, if they see sufficient grounds for so doing. If what he said in his own favor is not contradicted by evidence offered by the prosecutor, nor improbable in itself, it will naturally be believed by the jury; but they are not bound to give weight to it on that account, but are at liberty to judge of it, like all other evidence, by all the circumstances of the case." Greenl. on Ev., sec. 218.

In the case of *Roberts* v. *Gee*, 15 Barb. 449, the supreme court of New York say that, "when the oral admissions of a party are resorted to as evidence against him, the rule as now established permits the court and jury to believe that part of an admission which charges the party who makes it, and to disbelieve that part which discharges, when the latter is improbable on its face, or discredited by other testimony." To the same point see, also, *Green* v. *The State*, 13 Mo. 382; *Brown's Case*, 9 Leigh, 633; *The State* v. *Mahon*, 32 Vt. 241; *The People* v. *Wyman*, 15 Cal. 70; and *Corbett* v. *The State*, 31 Ala. 329.

In the last-mentioned case the supreme court of Alabama say: "When the prisoner's declarations have been adduced in evidence by the state, it is his right to have the entire conversation laid before the jury; yet it is not true that the declaration so adduced in evidence must be taken as true if there was no other evidence in the case incompatible with it."

We have been induced to refer to these decisions (and could give many others holding the same doctrine) because it is frequently insisted by counsel before us that, when the statements of a defendant are put in evidence, the jury have no right to believe a part and disbelieve a part.

The jury doubtless believed from the evidence that, if the defendant, Brown, did not himself take from the rack the horse for the theft of which he was on trial, he was present and knowing the unlawful intent of his confederate in the crime who did take the animal, and aided and encouraged him in the act. They also believed that the statements made by the prisoner were untrue, and were inconsistent with the other evidence in the case.

The jury are made the exclusive judges of the facts proven, and of the weight and credibility to be given to the testimony. It is the duty of the district judge who presides at the trial, and who, having the witnesses before him and hearing them testify, has better and more ample means of judging of the merits of an application for a new trial than an appellate court can possibly have, to correct any error committed by the jury in finding their verdict.

The only remaining question for us to consider is whether the evidence is sufficient to sustain the verdict and judgment.

It shows that the defendant and Lindsay were on intimate terms. They were seen together frequently during the evening, and just before the black gelding was stolen, and not far from where the stolen animal was hitched. They went together to an auctioneer in the city of Austin, and Lindsay got the auctioneer to sell a pony (which Brown had let him have), on the pretense that he, Lindsay, wanted to buy another horse. There is no evidence to show that he had any other, or bought any other, horse on that evening.

Between seven and eight o'clock of the same night, in the city of Austin, the pony that Brown had ridden to Austin, and the black gelding described in the indictment, were found hitched together. Brown's coat was found tied to the saddle that was stolen with the black gelding; and, when the stolen animal was claimed for the owner by a friend, Lindsay said he had swapped for him with a negro whose

name he did not know, up the river.   Then Brown spoke up and said what Lindsay had just said was so, and that Lindsay could prove it by him, Brown.   Just before Brown and Lindsay were arrested they were trying to sell their horses, Lindsay claiming the stolen animal, and Brown the sorrel pony.

After a careful examination of all the testimony, we believe that it is sufficient to sustain the conviction, and, believing that the verdict of the jury was in accordance with the law and the evidence, the judgment of the district court is affirmed.

*Affirmed.*